UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **EDCV 17-1680 JGB (KKx)** | Date | November 25, 2019 |
| Title | *Penny Pike, et al. v. County of San Bernardino, et al.* | | |

| Present: The Honorable | JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE |
|---|---|

| MAYNOR GALVEZ | Phyllis A. Preston |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| Alexander E. Papaefthimiou | Bryan Mercke |

**Proceedings:** Order GRANTING Plaintiffs' Motion for Approval of Settlement Under the Fair Labor Standards Act (Dkt No. 115)

## I. BACKGROUND

This case commenced on August 18, 2017, when Plaintiffs Penny Pike and David Denkin ("Plaintiffs") filed a class action complaint for violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), against Defendant County of San Bernardino ("Defendant" or "County"). ("Complaint," Dkt. No. 1.) Defendant filed an answer on September 27, 2017. (Dkt. No. 13.) On April 2, 2018 the parties stipulated to conditionally certify the action as a FLSA collective action and to provide notice. (Dkt. No. 28.) On April 3, 2018, the Court approved the parties' stipulation and conditionally certified the action as a FLSA collective action. (Dkt. No. 30.) Multiple Plaintiffs filed notices of consent to join the action. (Dkt. Nos. 33–39, 49.) By the close of the opt-in period, the Plaintiff Class with Pike and Denkin amounted to twenty-six members.

On October 28, 2019, Plaintiffs filed this motion for settlement approval under the FLSA. ("Motion," Dkt. No. 115.) Plaintiffs attached the following documents to their Motion:

- Memorandum ("Memo," Dkt. No. 115-1);
- Proposed Order (Dkt. No. 115-2);
- Declaration of C. Brooks Cutter ("Cutter Declaration," Dkt. No. 115-3);
- Declaration of Megan A. Richmond ("Richmond Declaration," Dkt. No. 115-4);

- Declaration of Alexander E. Papaefthimiou ("Papaefthimiou Declaration," Dkt. No. 115-5);
- Declaration of Jeffrey S. Ranen ("Ranen Declaration," Dkt. No. 115-6);
- Settlement Agreement ("Settlement Agreement," Dkt. No. 116-1);
- Allocation Sheet ("Allocation Sheet," Dkt. No. 116-2);
- Correspondence ("Correspondence," Dkt. Nos. 116-3, 116-4); and
- Supplemental Blazys Report ("Blazys Report," Dkt. No. 116-5).

## II.  SETTLEMENT AGREEMENT

Pursuant to the Settlement Agreement, Defendant shall pay $1,050,000.00 in unpaid overtime to the Plaintiff Class of twenty-six members. (Settlement Agreement ¶ 1.) Pike and Denkin shall receive an additional sum from the County as an incentive fee, with the amount to be determined at a future date upon motion. (Id. ¶ 2); (Memo at 8.) Similarly, the County shall pay an additional sum as attorneys' fees and costs to counsel for the Plaintiff Class, with the sum to be determined at a future date upon motion. (Settlement Agreement ¶ 3); (Memo at 8.) Payments due under the Settlement Agreement shall be made within thirty days of Court approval. (Settlement Agreement ¶ 7.) The County shall not take any retaliatory action against any member of the Plaintiff Class as a result of their claims. (Id. ¶ 4.) As a result of the Settlement Agreement, "[e]ach of the members of the Plaintiff Class shall release the County for any and all claims of uncompensated overtime that occurred while the class member was employed at the San Bernardino DAAS [Department of Aging and Adult Services] office during the Class Period only." (Id. ¶ 5.)

## III.  LEGAL STANDARD

The FLSA was enacted to protect workers from substandard wages and oppressive working hours. Barrentine v. Arkansas-Best Freight Sys., Inc., 450 U.S. 728, 739 (1981). The FLSA establishes federal-minimum-wage, maximum-hour, and overtime guarantees that cannot be modified by a contract. Beidleman v. City of Modesto, 2018 WL 1305713, at *1 (E.D. Cal. Mar. 13, 2018) (quoting Genesis Healthcare Corp. v. Symczyk, 569 U.S. 66, 69 (2013)). Thus, employee claims under FLSA cannot be waived for fear that employers may coerce employees into settlement and waiver. Selk v. Pioneers Mem'l Healthcare Dist., 159 F. Supp. 3d 1164, 1172 (S.D. Cal. Jan. 29, 2016) (quoting Lopez v. Nights of Cabiria, LLC, 96 F. Supp. 3d 170, 175 (S.D.N.Y. 2015)). Accordingly, FLSA claims may only be waived or settled if settlement is supervised by the Secretary of Labor or approved by a district court. Id.

The Ninth Circuit has not established criteria for district courts to consider to determine whether a FLSA settlement should be approved. Beidleman, 2018 WL 1305713 at *2. Rather, district courts in this circuit have relied on the standard adopted by the Eleventh Circuit, which considers whether the settlement is a fair and reasonable resolution of a bona fide dispute. Id. (citing Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350, 1352–53 (11th Cir. 1982)). A bona fide dispute exists when there are legitimate questions about the existence and extent of the defendant's FLSA liability. Id. (quoting Selk, 159 F. Supp. 3d at 1172). A court will not approve

a settlement if FLSA unequivocally entitles plaintiffs to the compensation they seek because it would shield employers from the full cost of complying with the statute. Id.

After a court determines a bona fide dispute exists, it will often apply factors for assessing a proposed class action settlement pursuant to Federal Rule of Civil Procedure 23. Seguin v. Cty. of Tulare, 2018 WL 1919823, at *2 (E.D. Cal. Apr. 24, 2018). District courts in this circuit recognize that some of the Rule 23 factors do not apply because of the inherent differences between class actions and FLSA actions. Id. Accordingly, to determine whether the settlement is fair and reasonable, courts will consider the totality of the circumstances within the context of FLSA. Seguin, 2018 WL 1919823 at *3. Courts often consider the following factors when evaluating settlements under FLSA: (1) the plaintiff's range of possible recovery; (2) the stage of proceedings and amount of discovery completed; (3) the seriousness of the litigation risks faced by the parties; (4) the scope of any release provision in the settlement agreement; (5) the experience and views of counsel and the opinion of participating plaintiffs; and (6) the possibility of fraud or collusion. Selk, 159 F. Supp. 3d at 1173. If after consideration of these factors the court determines that the settlement reflects a reasonable compromise over issues that are actually in dispute, the court may approve the settlement. Id.

## IV. DISCUSSION

### A. Existence of a Bona Fide Dispute

"If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute[,]… the district court [may] approve the settlement in order to promote the policy of encouraging settlement litigation." Dashiell v. Cty. of Riverside, 2018 WL 3629915, at *3 (C.D. Cal. July 19, 2018) (quoting Nen Thio v. Genji, LLC, 14 F. Supp. 3d 1324, 1333 (N.D. Cal. 2014)); see also Beidleman, 2018 WL 1305713 at *2 (explaining that legitimate questions about the existence and extent of a defendant's liability establish a bona fide dispute). "The reason for this requirement is to safeguard against an employee waiving his or her claims for wages, overtime compensation, or liquidated damages when there is no actual dispute between the parties." Id. (citing Lynn's Food Stores, 679 F.2d at 1353 n.8).

The Court finds the existence of a bona fide dispute. Plaintiffs allege the following: Defendant's policies required and permitted social workers employed by the San Bernardino DAAS to work unapproved and uncompensated overtime in off-hours and during meal breaks. (Complaint ¶¶ 17–25.) Defendant imposed significant caseloads with an 85% to 90% completion quota that Defendant knew was impossible for Plaintiffs to meet without overtime hours. (Papaefthimiou Declaration ¶ 5.) Defendant had to pre-authorize overtime, authorized insufficient overtime or none at all. (Id.) Defendant allegedly had knowledge that its social workers were working uncompensated overtime because of numerous complaints and the substantial size of caseloads. (Id.) Finally, Plaintiffs allege that Defendant did not inform them of their obligation to pay social workers for all hours worked. (Id.)

In contrast, Defendant disputes all of the above allegations.  Defendant contends the following: the caseloads and quotas it placed on Plaintiffs did not necessarily require overtime.  (Id. ¶ 6.)  Defendant argues that it had a policy of reporting all overtime during Plaintiffs' period of employment, and that for such a period it paid all reported overtime.  (Id.)  Defendant also contends that it offered overtime to social workers freely and would work with any social worker who had difficulty with their quotas.  (Id.)  Defendant argues that it had no knowledge of uncompensated overtime, as all such overtime was performed outside the office and unreported.  (Id. ¶ 7.)  Defendant asserts that it encouraged its social workers to report all hours worked and offered workers paid time-off as a remedy for unreported overtime.  (Id.)  Last, Defendant disputes the hours of overtime claimed by Plaintiffs and argues that the claimed hours lack evidentiary support.  (Id.)

These differences illustrate genuine issues regarding "FLSA coverage or computation of back wages."  Dashiell, 2018 WL 3629915, at *3.  Issues to do with such matters are central to the establishment of a valid FLSA claim.  Additionally, because Defendant disputes the existence and amount of unpaid overtime hours, this is not a case in which Plaintiffs are unequivocally entitled to compensation.  Beidleman, 2018 WL 1305713 at *2.  Accordingly, the Court finds a bona fide dispute between the parties.  See Mertens v. DIRECTV, LLC, 2018 WL 4998287, at *1 (C.D. Cal. Mar. 7, 2018) (holding that defendant's dispute as to the amount and existence of unpaid wages established a bona fide dispute between the parties).

**B. Fairness and Reasonableness of the Proposed Settlement**

In addition to establishing a bona fide dispute, Plaintiffs must establish that the Settlement Agreement is fair and reasonable.  After weighing the factors below, the Court finds the Settlement Agreement to be fair and reasonable under the FLSA.

**1. Plaintiffs' Range of Possible Recovery**

"To determine whether the proposed settlement is fair and reasonable, the proposed settlement amount should be balanced against the strength of the plaintiff's FLSA claim and the reasonable range of recovery on the claim."  Jefferson v. MEC Dev., LLC, 2019 WL 176262, at *4 (E.D. Cal. Jan. 11, 2019).  The Settlement Agreement proposes an award of $1,050,000.00 to Plaintiffs.  (Settlement Agreement ¶ 1.)  As Plaintiffs point out, the FLSA's statute of limitations depends upon whether Defendant's violations were "willful."  See 29 U.S.C. § 255(a) ("Any action commenced… under the [FLSA]… may be commenced within two years after the cause of action accrued… except that a cause of action arising out of a willful violation may be commenced within three years…").  If Plaintiffs had proved a willful violation, Defendants would owe an estimated $1,205,404.00 in unpaid overtime over three years.  (Allocation Sheet at 1.)  If Plaintiffs did not prove willfulness, Defendant would owe $769,447.00 in unpaid overtime

accrued over two years.  (Papaefthimiou Declaration ¶ 20.)  Thus, Plaintiffs' reasonable range of recovery spans between 87% and 136% of the proposed settlement amount.[1]  (Id. ¶ 22.)

Balanced against the strength of Plaintiffs' FLSA claim, the range of recovery is fair and reasonable.  Because much of Plaintiffs' overtime was unreported and worked away from the office, it would be difficult for Plaintiffs to establish the prerequisite knowledge of unpaid overtime required to show a willful violation of FLSA.  (See Complaint ¶ 24 ("Defendants were aware that the DAAS social workers… performed work that could not be completed in forty (40) hours per week and required them to work overtime.")); (see also id. ¶ 22 ("Defendants failed to accurately record, report, and/or preserve records of hours worked by DAAS social workers.").)  Even if Plaintiffs proved Defendant's willful violation, to recover fully for unpaid hours they would have to evidence thousands of hours of undocumented overtime worked by dozens of individuals across several years.  The uncertain length of the statute of limitations and the difficulty of proving thousands of hours of undocumented and unpaid overtime inform the Court's finding that a range of recovery of 87% to 136% is reasonable.  See Saleh v. Valbin Corp., 2018 WL 6002320, at *3 (N.D. Cal. Nov. 15, 2018) (finding settlement amount of 18.87% of total possible recovery to be fair and reasonable); Mertens, 2018 WL 4998287, at *2 (approving 59% of total potential recovery); Knight v. Red Door Salons, Inc., 2009 WL 248367, at *5 (N.D. Cal. Feb. 2, 2009) (approving a settlement amount of 50% of total possible recovery).

### 2. The Stage of the Proceedings and the Amount of Discovery Completed

In order for the Settlement Agreement to be fair and reasonable, the parties must show that they have "sufficient information to make an informed decision about settlement."  Saleh, 2018 WL 6002320, at *3 (quoting Linney v. Cellular Alaska P'ship, 151 F.3d 1234, 1239 (9th Cir. 1998); see also Dashiell, 2018 WL 3629915, at *4 ("The Court must also consider the stage of the proceedings and the amount of discovery completed to ensure the parties 'have an adequate appreciation of the merits of the case before reaching a settlement.'") (quoting Selk, 159 F. Supp. 3d at 1177).

The parties in this case have engaged in extensive discovery.  Thousands of interrogatories and requests for production have been served. (Memo at 4.)  Defendant produced over 32,000 pages of documents in discovery.  (Id.)  Twelve witnesses were deposed, including several class members and County administrators.  (Id.)  Plaintiffs designated two expert witnesses, each of whom prepared a report.  (Id.)  Furthermore, both parties participated in mediation and engaged in lengthy settlement negotiations.  (Id. at 1, 5–6.)  In light of the significant quantity of discovery and the advanced stage of proceedings, the Court finds this factor weighs in favor of approval of the Settlement Agreement.  See Rodriguez v. Danell Custom Harvesting, LLC, 327 F.R.D. 375, 388 (E.D. Cal. 2018) ("The fact that the parties believe they engaged in sufficient discovery to weigh the merits of the action and engaged the services of a

---

[1] The Settlement Agreement would distribute this award on a pro rata basis to each of the twenty-six Plaintiffs.  (Papaefthimiou Declaration ¶ 24); (Allocation Sheet at 1.)  Thus, each Plaintiff would receive 87% to 136% of their claimed unpaid overtime.

professional mediator in settling the action weighs in favor of approving the class action settlement.").

### 3. The Seriousness of the Litigation Risks Faced by the Parties

"'Courts favor settlement where there is a significant risk that litigation might result in a lesser recover[y] for the class or no recovery at all.'" Dashiell, 2018 WL 3629915, at *4 (quoting Seguin, 2018 WL 1919823, at *4) (internal quotations omitted). As detailed above, if Plaintiffs were unable to establish Defendant's willfulness, recovery would be less than that proposed by the Settlement Agreement. (Memo at 10.) Furthermore, Defendant continues to dispute the number of hours of claimed unpaid overtime by Plaintiffs. (Id. at 11.) As many of these hours were undocumented, Plaintiffs may not recover all of their alleged unpaid overtime if they proceed to trial. Thus, Plaintiffs risk lesser recovery without settlement. "Considering the uncertainties of litigation, the relative immediacy of settlement serves to benefit the purported class members." Valentine v. Sacramento Metro. Fire Dist., 2019 WL 651654, at *5 (E.D. Cal. Feb. 15, 2019). As a result, the litigation risks posed absent a settlement weigh in favor of granting the Motion.

### 4. The Scope of Any Release Provision in the Settlement Agreement

A FLSA settlement may not release claims that go beyond the issues presented in the complaint. Dashiell, 2018 WL 3629915, at *4. However, a settlement may release claims "based on the identical factual predicate as that underlying the claims in the settled class action." Saleh, 2018 WL 6002320, at *4 (N.D. Cal. Nov. 15, 2018) (quoting Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 748 (9th Cir. 2006)). The release provision in the Settlement Agreement is appropriately limited to members of the Plaintiff Class for claims accrued while each class member was employed by the County. (Settlement Agreement ¶ 5.) The scope of the release is no greater than the scope of the claims in the Complaint. Consequently, this factor favors approval of the Settlement Agreement. See Valentine, 2019 WL 651654, at *6 ("Because the release is sufficiently tailored to the claims at issue in this suit, this factor counsels in favor of approving the settlement.").

### 5. The Experience and Views of Counsel and the Opinion of Participating Plaintiffs

The opinion of experienced counsel as to the fairness and reasonableness of a settlement carries "considerable weight" in determining whether a settlement should be approved. Dashiell, 2018 WL 3629915, at *4 (quoting Selk, 159 F. Supp. 3d at 1176). Several of Plaintiffs' attorneys have significant experience in class actions. Mr. Papaefthimiou has handled a significant number of federal and state class action lawsuits and negotiated numerous class action settlements. (Papaefthimiou Declaration ¶¶ 26–31.) Ms. Richmond has represented clients in class actions for almost twenty years, with the bulk of that experience based in the representation of social workers in FLSA claims. (Richmond Declaration ¶¶ 11–12.) Both Mr. Papaefthimiou and Ms. Richmond believe the Settlement to be fair and reasonable. (Papaefthimiou Declaration ¶ 3); (Richmond Declaration ¶ 3.) Furthermore, while Plaintiffs provide no evidence of the

opinions of class members, all members of the Plaintiff Class agreed to the Settlement and allocation of recovery. (Richmond Declaration ¶ 9); see also Valentine, 2019 WL 651654, at *6 (holding that despite a lack of evidence of plaintiffs' individual opinions, plaintiffs' signing of the settlement agreement evidenced the fairness and reasonability of the settlement); Rodriguez, 327 F.R.D. 375, 389 ("The absence of any objections [by class members] is compelling evidence that the settlement is fair, adequate and reasonable."). Class counsels' opinions that the Settlement is reasonable in addition to the support of the Plaintiff Class weigh in favor of approval of the Settlement Agreement.

### 6. The Possibility of Fraud or Collusion

The last factor for the Court to consider is the possibility that the settlement was obtained by fraud or collusion. "The likelihood of fraud or collusion is low… [when] the Settlement was reached through arm's-length negotiations, facilitated by an impartial mediator." Dashiell, 2018 WL 3629915, at *4 (quoting Slezak v. City of Palo Alto, 2017 WL 2688224, at *5 (N.D. Cal. June 22, 2017)). Here, both parties — including counsel and members of the Plaintiff Class — attended mediation before a professional mediator. (Papaefthimiou Declaration ¶ 16.) While mediation ultimately failed to produce a settlement, both parties continued to participate in informal arms-length negotiations for months. (Id. ¶¶ 17–18); (Memo at 13.) Through persistent negotiation and discovery of facts relevant to Plaintiffs' claims, the parties agreed on the material terms of the Settlement Agreement on August 6, 2019. (Papaefthimiou Declaration ¶¶ 17–18.) Moreover, the parties did not reach an agreement as to attorneys' fees and left it to the Court to calculate such fees if the parties did not negotiate an amount within thirty days. (Settlement Agreement ¶¶ 2–3.) Therefore, there is no risk that the Settlement Agreement was the rushed product of collusion intended to disproportionately award class counsel with exorbitant fees. See In re Bluetooth Headset Prod. Liab. Litig., 654 F.3d 935, 946 (9th Cir. 2011) (identifying reduced settlement amounts in return for higher attorney's fees as one indicator of collusion). The Court finds no evidence of potential fraud or collusion. As such, the last factor favors approval of the Settlement Agreement.

## C. Named Plaintiff Incentive Award and Attorneys' Fees and Costs

The FLSA permits a court to award reasonable attorneys' fees and plaintiff incentive awards pursuant to a Settlement Agreement. Courts must scrutinize and assess the reasonableness of both proposed amounts to ensure that named plaintiffs and their counsel did not accept a settlement at the detriment of the class. Dashiel, 2018 WL 3629915, at *5 (citing Staton v. Boeing Co., 327 F.3d 938, 977 (9th Cir. 2003)). The Settlement Agreement stated that the parties would negotiate the amount of attorneys' fees and incentive awards in good faith for thirty days after the acceptance of the Settlement. (Settlement Agreement ¶¶ 2–3.) If no agreement was reached within thirty days, both parties agreed to allow the Court to determine the amount upon future motion. (Id.) The parties failed to reach an agreement as to attorneys' fees and incentive awards within thirty days. (Papaefthimiou Declaration ¶ 19.) Plaintiffs intend to file a motion at a later date for the Court to determine a reasonable amount of attorneys' fees and incentive awards. (Id.) Because the parties agreed the Court should calculate both amounts,

the Settlement Agreement's provision of attorneys' fees and incentive awards is reasonable. <u>Cf. In re Bluetooth</u>, 654 F.3d at 946 (stating that it is the district court's role to ensure payment of attorneys' fees are fair); <u>Valentine</u>, 2019 WL 651654, at *8 ("Whether to authorize an incentive payment to a class representative is a matter within the court's discretion."). The Court will determine both amounts, if any, upon future motion.

To summarize, upon balance of the factors above, the Court finds the Settlement Agreement to be a fair and reasonable resolution of a bona fide dispute. Reasonable plaintiff incentive awards and attorneys' fees will be calculated by the Court upon future motion. The Court GRANTS Plaintiffs' Motion.

## V.   CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiffs' Motion.

**IT IS SO ORDERED.**